BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE JOHN BURTON, PRESIDENT PRO TEMPORE OF THE STATE SENATE, has requested an opinion on the following question:
Is it a violation of the state's animal cruelty laws for an animal control officer or humane society officer to use intracardiac administration of euthanasia on a conscious animal in an animal shelter or humane society facility?
 CONCLUSION
It is a violation of the state's animal cruelty laws for an animal control officer or humane society officer to use intracardiac administration of euthanasia on a conscious animal in an animal shelter or humane society facility if the animal may first be rendered unconscious in a humane manner or if, in light of all the circumstances, the procedure is unjustifiable.
 ANALYSIS
The question presented for analysis concerns a particular method of euthanizing sick, injured, homeless, or unwanted domestic pets or animals by an animal control officer or humane society officer in an animal shelter or humane society facility.[1] This method of euthanasia involves the injection of sodium phenobarbital directly into the heart of the animal and is one of several methods of injection euthanasia. Would the animal control or humane society officer violate the state's animal cruelty statutes if he or she administers an intracardiac injection to a conscious animal, as opposed to an unconscious or heavily sedated one?[2]
We conclude that an officer administering an intracardiac injection may violate the animal cruelty laws if in so doing, he or she causes or permits the infliction of unnecessary or unjustifiable pain or suffering.
Penal Code section 597, subdivision (b),[3] is the primary statute requiring our interpretation. It states:
"Except as otherwise provided in subdivision (a) or (c), every person who . . . tortures, torments, . . . cruelly beats, mutilates, or cruelly kills any animal, or causes or procures any animal to be so . . . tortured, tormented, . . . to be cruelly beaten, mutilated, or cruelly killed; and whoever, having the charge of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, . . . is, for every such offense, guilty of a crime punishable as a misdemeanor or as a felony or alternatively punishable as a misdemeanor or a felony and by a fine of not more than twenty thousand dollars ($20,000)."
Section 599b defines various terms used in the animal cruelty laws as follows:
"In this title [§§ 594-625c] the word `animal' includes every dumb creature; the words `torment,' `torture,' and `cruelty' include every act, omission, or neglect whereby unnecessary or unjustifiable physical pain or suffering is caused or permitted. . . ."
Would a conscious animal be subject to needless suffering or unnecessary cruelty when the intracardiac injection method of euthanasia is used? Would it matter that the animal will be put to death in any event as the result of an official determination that euthanasia is necessary?
In addressing these issues, we note first that under the Veterinary Medicine Practice Act (Bus. Prof. Code, §§ 4800
-4917), an employee of an animal control shelter or humane society may administer sodium phenobarbital as a method of euthanasia if certain conditions are met. Business and Professions Code section 4827 provides:
"Nothing in this chapter prohibits any person from:
". . . . . . . . . . . . . . . . . . . . . . . . . . .
"(d) Administering sodium phenobarbital for euthanasia of sick, injured, homeless, or unwanted domestic pets or animals without the presence of a veterinarian when the person is an employee of an animal control shelter and its agencies or humane society and has received proper training in the administration of sodium phenobarbital for these purposes."
The California Veterinary Medical Board has administratively implemented this statutory provision regarding the "proper training in the administration of sodium phenobarbital" by adopting section 16:2039
of title 16 of the California Code of Regulations[4] as follows:
"(a) In accordance with section 4827(d) of the Code, an employee of an animal control shelter or humane society and its agencies who is not a veterinarian or registered veterinary technician (RVT) shall be deemed to have received proper training to administer, without the presence of a veterinarian, sodium phenobarbital for euthanasia of sick, injured, homeless or unwanted domestic pets or animals if the person has completed a curriculum of at least eight (8) hours as specified in the publication by the California Animal Control Directors Association and the State Humane Association of California entitled `Euthanasia Training Curriculum' dated October 24, 1997, that includes. . . .
"(b) The training curriculum shall be provided by a veterinarian, an RVT, or an individual who has been certified by the California Animal Control Directors Association and the State Humane Association of California to train persons in the humane use of sodium phenobarbital as specified in their publication entitled `Criteria for Certification of Animal Euthanasia Instructors in the State of California' dated September 1, 1997."
Regulation 2039 thus recognizes the "humane use of sodium pentobarbital." The publication entitled "Criteria for Certification of Animal Euthanasia Instructors in the State of California" that is specified in Regulation 2039 states in part: "IC-Intracardiac and intrahepatic injections are not to be done on [unanesthetized] animals." (Id. at p. 4.) This publication also refers to the 1993 Report of the American Veterinary Medical Association Panel of Euthanasia (ibid.), which states in part:
". . . Intracardiac administration [of injectable euthanasia agents] is not considered acceptable in awake animals, owing to the difficulty and unpredictability of performing the injection accurately. Intracardiac injection is acceptable only when performed on heavily sedated, anesthetized, or comatose animals. . . ." (Journal of the American Veterinary Medical Association (Jan. 15, 1993), Vol. 202, p. 238.)
Accordingly, under state law and implementing administrative regulations, the use of an intracardiac injection on a conscious animal in an animal shelter or humane society facility may be found to be both unnecessary and unjustifiable. It matters not that the animal is to be put to death in any event as the result of an official determination that euthanasia is necessary.
We believe that a violation of section 597, subdivision (b), may be established where an animal control officer or a humane society officer performs the intracardiac injection method of euthanasia on a conscious animal. The statutorily mandated training in animal euthanasia specifies that intracardiac injections are not be to done on unanesthetized animals because the practice is considered too difficult and unpredictable. Prosecution is warranted where the intracardiac injection procedure is used on a conscious animal despite (1) training to the contrary, (2) the existence of more humane alternatives, and (3) a substantial risk of performing the injection inaccurately.
While the Legislature has outlawed various methods of killing animals (see, e.g., §§ 597u, 597v, 597w, 597y) and not specifically the administration of intracardiac injections on conscious animals, the court in People v. Speegle (1997) 53 Cal.App.4th 1405,1411, observed:
". . . There are an infinite number of ways in which the callously indifferent can subject animals in their care to conditions which make the humane cringe. It is thus impossible for the Legislature to catalogue every act which violates the statute. Nonetheless, the terms `necessary,' `needless,' and `proper' all give fair notice of an objective standard of reasonableness in the provision of sustenance, drink, and shelter, and in the avoidance of infliction of suffering. The notice component of due process does not require any more. [Citation.]"
Here, Business and Professions Code section 4827 and the implementing regulations provide an objective standard for avoiding the infliction of pain and suffering by those who are required to be trained in humane animal euthanasia procedures. For purposes of the state's animal cruelty laws, that standard would not be met when an animal control officer or a humane society officer uses the intracardiac administration of euthanasia on conscious animals.
We conclude that it is a violation of the state's animal cruelty laws for an animal control officer or humane society officer to use the intracardiac administration of euthanasia on a conscious animal in an animal control shelter or humane society facility if the animal may first be rendered unconscious in a humane manner or if, in light of all the circumstances, the procedure is unjustifiable.
 * * * * *
[1] We include as "officers" the employees of an animal control shelter or humane society who have been trained in the administration of sodium phenobarbital for purposes of euthanasia.
[2] Situations involving animal health emergencies or other exigent circumstances encountered in the field are beyond the scope of this opinion. Also, veterinarians may use their professional judgment in determining when the use of this method of euthanasia on conscious animals is necessary and justifiable in a particular situation. Accordingly, our analysis does not apply to veterinarians.
[3] All references hereafter to the Penal Code are by section number only.
[4] All references hereafter to title 16 of the California Code of Regulations are by regulation number only.